UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REUBEN CHIZOR,                                          :

                     Petitioner,             :        **MEMORANDUM DECISION**

                - v -                    :        21-cv-4411 (DC)

LYNN J. LILLEY, Superintendent,                        :

                             :

                    Respondent.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:        REUBEN CHIZOR
                         *Petitioner Pro Se*
                         DIN 17A4199
                         Eastern NY Correctional Facility
                         30 Institution Rd., P.O. Box. 338
                         Napanoch, NY 12458-0338

                         MELINDA KATZ, Esq.
                         District Attorney, Queens County
                         By:    Johnnette Traill, Esq.
                                 Danielle S. Fenn, Esq.
                                 Assistant District Attorneys
                         125-01 Queens Boulevard
                         Kew Gardens, NY 11415
                               Attorney for Respondent

CHIN, Circuit Judge:

          On June 8, 2017, following a jury trial, petitioner Reuben Chizor was

convicted in the Supreme Court of New York, Queens County (Latella, *J.*), of multiple

counts of rape in the first and second degrees, sexual abuse in the first degree, and

endangering the welfare of a child.  Dkt. 8 at 7.  On July 11, 2017, the trial court sentenced Chizor to a total of fifteen years' imprisonment followed by ten years' post-release supervision.  *See* Dkt. 8 at 7-8.  The Appellate Division, Second Department affirmed his convictions, *People v. Chizor*, 190 A.D.3d 763 (2d Dep't 2021) ("*Chizor I*"), and the New York Court of Appeals denied his application for leave to appeal, *People v. Chizor*, 37 N.Y.3d 954 (2021) (Wilson, *J.*) ("*Chizor II*").

On August 2, 2021, Chizor filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition") in this Court.  Dkt. 1.[1]  Chizor raises three grounds in his Petition, alleging violations of his constitutional rights because: (1) the trial court denied his request for an adjournment to secure the testimony of an expert witness, (2) his trial was plagued by prosecutorial misconduct in the form of repeated improper questions and comments, and (3) the prosecutor engaged in further misconduct by violating the trial court's ruling on evidence about uncharged crimes under *People v. Molineux*, 168 N.Y. 264 (1901) (the "*Molineux* ruling").  *Id.* at 6, 9.  The Queens County District Attorney's Office opposed the Petition on December 27, 2021.  Dkt. 8.  On April 9, 2024, the case was reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

---

[1]      In the Petition, Chizor spells his first name "Rueben."  *See* Dkt. 1 at 1.  The docket, however, uses the spelling "Reuben" and that is what I use here.

*STATEMENT OF THE CASE*

I.    *The Facts[2]*

The evidence at trial established the following:

In November 2006, WC (age nine) and PS (age seven), who are sisters, met Chizor at a church event, where Chizor was distributing turkeys for Thanksgiving.  At the time, Chizor was the pastor of the church -- New Hope Restoration Ministries in Queens Village.  WC and PS attended the church with their family.  Dkt. 8-5 at 56.

The church had a basement that was used for events and storage.  The basement also contained a bed.  Children in the church community, including WC and PS, sometimes slept in the church basement.  Chizor lived in the church building; his bedroom was on the third floor.  *Id.*

WC and PS had a verbally and physically abusive mother, who sometimes deprived the children of food for days and hit them.  As a result, the children lived in foster homes at times.  *Id.*

To help WC and PS cope with their mother's abuse, Chizor conducted counseling sessions with them at the church.  Chizor hugged WC and rubbed her back,

---

[2]      The facts are primarily drawn from Respondent's brief submitted in opposition to Chizor's direct appeal in the Appellate Division in 2020.  *See* Dkt. 8-5 at 44-107.  It is not necessary to give a more detailed recitation of the facts -- many of which are graphic -- to resolve Chizor's habeas corpus petition.  Respondent's brief to the Appellate Division contains more detailed recitations of the facts with extensive citations to the trial record.  *See, e.g., id.* at 56.

and WC testified that Chizor made her feel protected.  Chizor also rubbed PS's back and told her that she would be okay.  PS testified that Chizor made her feel protected and she felt that she could confide in Chizor.  In the beginning, PS considered their relationship like one between a father and child.  *Id.* at 57.

In July 2011, when WC was fourteen, WC and Chizor became friends on the social media platform Facebook, where they sent each other messages.  WC called Chizor nicknames like "Daddy" and "Hun," and complimented his appearance by calling him "fine."  Chizor, in turn, called her "Baby," which WC took to be a nickname "that your boyfriend gives you."  They only used these nicknames in their Facebook communications because of the "secretive" nature of their relationship.  *Id.*

Also in 2011, when PS was twelve, PS and Chizor became friends on Facebook.  They exchanged Facebook messages, with Chizor calling her "Baby" and "Sweetheart."  *Id.*

On July 27, 2011, WC visited the church basement after school.  Chizor was there, along with PS and another girl -- but those two soon left, leaving WC and Chizor alone in the basement.  They talked about WC's mother.  Chizor asked WC to sit on her lap, and she did, though she later felt weird about it.  Chizor asked WC to kiss him.  She did -- on the cheek.  Chizor then asked WC to kiss him on the lips.  She did.  Chizor told WC he had feelings for her but that they had to keep it a secret from other

people, who would not understand.  WC got up from Chizor's lap after hearing

someone enter the basement.  *Id.* at 57-58.

Once that person left, Chizor told WC that he wanted to have sex, and she

said "okay."  He locked the basement door, told her to calm down, and reassured her.

He told WC to lie down on the bed, which he covered with blankets and a sheet.  He

inserted his penis into her vagina.  Afterwards, Chizor told WC not to tell anyone that

they had sex and repeated that warning on a later phone call.  In August 2011, Chizor

inserted his penis into WC's vagina for a second time in the church basement.  WC

thought they were in a secret relationship.  Because of these encounters, she saw

Chizor's penis and testified that he was uncircumcised.  *Id.* at 58.

A similar scenario unfolded between Chizor and PS.  Chizor told PS that

their relationship had to be a secret, or other people would try to separate them out of

jealousy.  On August 22, 2011, Chizor told PS to come to the church basement.  There,

Chizor inserted his penis into PS's vagina.  PS testified that this physically hurt her, and

the sex made her feel "confused" and "weird."  *Id.* at 58-59.

Chizor and PS continued to exchange messages on Facebook.  On April

10, 2012, Chizor told PS that he was disappointed that she discussed their secret

relationship with others and told her not to do so again.  *Id.* at 59.

In March 2013, PS spent two days at Zucker Hillside psychiatric hospital

after being admitted for auditory hallucinations.  PS heard voices and sometimes would

talk or laugh in response to the voices as a coping mechanism; she also cut her arms -- leaving scars -- during these episodes.  The auditory hallucinations stopped after PS took an antipsychotic medication.  During her stay at the psychiatric hospital, hospital staff asked her questions about physical abuse and sexual activity.  PS denied being abused to protect her mother and said she was not sexually active.  *Id.* at 60.

Also in March 2013, WC ended her relationship with Chizor.  WC did not like how Chizor treated her in public, which differed from how he treated her in private.  *Id.*

After a stint living upstate, WC returned to Queens in May 2015, when she was 18 years old, and lived with a friend.  On July 26, 2015, WC saw Chizor at church, and he allowed her to sleep at the church that night.  Chizor also slept at the church.  On July 28, 2015, WC spoke to a friend -- Wislande Desir -- who also belonged to the church and lived there with her son.  They spoke about boys and sex, and their conversation made WC feel that it was time to disclose her relationship with Chizor.  Accordingly, she told Desir that Chizor took her virginity in 2011.  *Id.* at 60-61.

In the evening of July 28, 2015, after speaking with Desir, WC told PS that Chizor took her virginity and that they had sex in July 2011 and August 2011.  By this time, the relationship between PS and Chizor had also ended -- PS stopped attending Chizor's church in February 2015 because she did not want to be in a relationship with him.  *Id.* at 60.  PS disclosed that she had sex with Chizor in August 2011 -- a fact that

6

upset WC, making her scream and curse.  WC returned to the church and told Desir,

who was outside, that she was going to call the police.  The police arrived at the church

thereafter.  *Id.* at 61.

Finally, the parties "stipulated that if Police Officer [Lawrence] Sloan had

testified, he would state that he was the first officer to interview PS and that his aided

card report states that she reported that [Chizor] forcibly raped her." *Id.* at 64.

**II.**      *The State Court Proceedings*

   ***a.***      ***The Indictment and Pre-Trial Proceedings***

In 2016, Chizor was indicted in Queens County for multiple counts of

rape, sexual abuse of a child, and endangering the welfare of a child.  Dkt. 8-5 at 43;

Dkt. 8-1 at 54.  The indictment alleged that Chizor raped WC and PS, and committed

other sexual crimes against them, in Queens County in July  and August 2011.

On May 23, 2017, the prosecution made a written application under *People*

*v. Molineux*, 168 N.Y. 264 (1901), seeking the admission of evidence of uncharged crimes

-- specifically, evidence that Chizor continued to have sex with W.C. and P.S. after the

dates charged in the indictment.  Dkt. 8 at 29 n.5; Dkt. 8-1 at 89.  In proceedings before

the trial court on May 30, 2017, the People argued that without this evidence, the jury

would be confused about why the victims took so long to go to the police.  Dkt. 8-1 at

89-90.  The defense objected, and the trial court denied the application.  Specifically, the

court ruled:

7

> [W]ith respect to any testimony concerning continued sexual contact between the complainants and the defendant after the dates charged in the indictment, I'm not going to allow any testimony concerning continued sexual act.  Clearly those are uncharged crimes which the People could have chosen to indict the defendant for, for whatever reason the People chose not to do that.  To allow that type of evidence in now would clearly go to propensity . . . . There's no reasonable basis to allow evidence of subsequent sexual contact between the complainants and the defendant into evidence.

*Id.* at 93.

In the same pre-trial hearing, the prosecution moved to preclude Chizor from cross-examining PS on her psychiatric records, which had been provided to the defense.  The court denied the prosecution's motion to preclude cross-examination.  *Id.* at 95-96.

### b.   *The Trial*

Trial began on May 31, 2017.  Dkt. 8-1 at 98.  The jury heard testimony from the People's witnesses: WC, Dkt. 8-2 at 106-165; PS, Dkt. 8-2 at 181 to Dkt. 8-3 at 11; Wislande Desir, the woman who lived at the church and spoke with WC, Dkt. 8-3 at 15-32; and Dr. Anne Meltzer, a child psychologist who gave expert testimony on child sexual abuse, Dkt. 8-3 at 33-56.  At the close of the prosecution's case, Chizor moved for a trial order of dismissal for failure to establish a *prima facie* case.  The trial court denied the motion.  *Id.* at 57-59.

8

The defense presented a case with just one witness: Chizor, Dkt. 8-3 at 76-125.  Chizor testified that he had a father-daughter relationship with WC and PS, which included hugging them.  He conducted counseling sessions with WC, PS, and their mother, grandmother, and brother, but neither WC nor PS spoke to him about their mother's abuse.  Dkt. 8-5 at 63.  He did testify, however, that WC told him about her mother's abuse over private Facebook messages.

Chizor testified that he messaged WC and PS on Facebook late at night.  He called  WC "baby," and she called him "daddy."  *Id.*  He further testified that WC requested to stay at the church in July 2015, but he refused because she was no longer a member of the church.  *Id.* at 63-64.

Chizor testified that he did not have sex with WC and PS.  He was circumcised as a child and a photograph purportedly depicting his penis was admitted into evidence by the defense.  *Id.* at 64.

The People did not present a rebuttal case.  Dkt. 8-3 at 126-27.  At the close of trial, Chizor moved to dismiss the charges, and the trial court denied the application. *Id.* at 127-28.

On June 8, 2017, the jury found Chizor guilty of one count each of rape in the first degree of PS on August 22, 2011, rape in the second degree of WC on July 27, 2011, and sexual abuse in the first degree of PS on August 22, 2011, as well as one count each of endangering the welfare of a child with respect to PS on August 22, 2011 and

9

with respect to WC on or about and between July 27, 2011 and August 31, 2011.  *Id.* at

219, 223-24.  The jury found Chizor not guilty of one count of rape in the second degree

with respect to WC in August 2011.  *Id.* at 223.

### c.      The Sentencing Hearing

On July 11, 2017, the trial court sentenced Chizor.  Dkt. 8 at 7.  The People

requested that Chizor be sentenced to forty years' incarceration, Dkt. 8-4 at 2, and

Chizor's defense counsel requested leniency, *id*. at 3.  Chizor spoke on his behalf at

sentencing and maintained his innocence.  *Id*. at 3-6.

The court sentenced Chizor to: (1) ten years' imprisonment followed by 10

years' post-release supervision on the first-degree rape count, (2) five years'

imprisonment followed by 10 years' post-release supervision on the second-degree rape

count, to run consecutively to  the sentence for first-degree rape, (3) five years'

imprisonment followed by 10 years' post-supervision release on the count of first-

degree sexual abuse, to run concurrently to the other sentences, and (4) one year

imprisonment for each of the two counts of endangering the welfare of a child, to run

concurrently to the other sentences.  *Id.* at 7.  Accordingly, Chizor was sentenced to a

total of fifteen years' imprisonment.

### d.      Direct Appeal

Chizor appealed his convictions and sentence to the Appellate Division,

Second Department, asserting the following claims: (1) the court violated his right to

10

present a defense when it denied his counsel's request for an adjournment to call an expert to testify about PS's psychiatric records, (2) the prosecutor improperly used the child psychologist's testimony to bolster the credibility of WC and PS, and tried to elicit testimony about how sexual offenders groom their victims, (3) the prosecutor improperly questioned WC and PS on direct examination and committed prosecutorial misconduct during Chizor's cross-examination and summation, (4) the prosecutor's violation of a *Molineux* ruling -- which precluded evidence that Chizor had a sexual relationship with WC and PS that continued beyond the dates in the indictment -- deprived him of a fair trial.  Because of the alleged prosecutorial misconduct and other purported errors, Chizor requested a new trial.  Dkt. 8 at 8.

On January 13, 2021, the Appellate Division affirmed Chizor's convictions. *See Chizor I*, 190 A.D.3d at 763-64.  The Appellate Division held that (1) Chizor's claim that he was deprived of his right to present a defense had "no merit," (2) Chizor failed to preserve for appellate review his bolstering claim, and (3) Chizor "largely" failed to preserve for appellate review his claims about prosecutorial misconduct about the prosecutor's questioning of witnesses and summation, but "[i]n any event, while some comments and questions were improper, they did not, either alone or in combination, serve to deprive [Chizor] of a fair trial." *Id.*  Finally, the Appellate Division found that Chizor's remaining contentions lacked merit. *Id.*

11

On May 16, 2021, the New York Court of Appeals (Wilson, *J.*) denied leave to appeal. *Chizor II*, 37 N.Y.3d at 954.

### III.    *The Petition*

In the Petition, Chizor seeks habeas relief on three grounds: (1) the trial court denied his request for an adjournment to introduce testimony of an expert witness, (2) the trial was plagued by prosecutorial misconduct in the form of repeated improper questions and comments, and (3) the prosecutor engaged in further misconduct by violating the trial court's *Molineux* ruling. Dkt. 1 at 6, 9. Respondent filed its opposition and the state court record on December 27, 2021. Dkt. 8 at 1. Chizor did not file a reply.

On December 29, 2021, Respondent moved to seal the already-filed state court record pursuant to New York Civil Rights Law § 50-b because it contained references to the names of sex offense victims. Dkt. 11. On January 3, 2022, this Court (DeArcy Hall, *J.*) granted Respondent's request to seal the state court record. On January 21, 2022, Chizor opposed Respondent's motion to seal. Dkt. 13. Despite the Court's order, however, the record was never sealed.

On October 7, 2022, Chizor moved to amend the Petition to add a claim of ineffective assistance of trial counsel and requested that the Petition be held in abeyance while he exhausted that claim. Dkt. 14. On April 27, 2023, Magistrate Judge Bloom recommended that this Court deny Chizor's motion without prejudice because he failed

12

to file a proposed amended petition with his motion to amend and noted that any motion to amend had to address whether the additional claim relates back to the claims in the Petition.  Dkt. 15 at 2-3.  Judge Bloom also recommended that this Court deny Chizor's request to stay the proceeding without prejudice, because of Chizor's failure to file a proposed amended petition.  *Id.* at 4.

On May 7, 2023, Chizor notified this Court of his intention to resubmit his motion to amend by June 5, 2023.  Dkt. 16.  Chizor failed to resubmit his motion to amend, and on September 13, 2023, this Court (DeArcy Hall, *J.*) adopted Judge Bloom's report and recommendation and denied Chizor's motion to amend with leave to renew. Chizor has not sought to renew the motion.

## DISCUSSION

### I. *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state

court's decision must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015) (citing *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009)). "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam) (quoting *Harrington*, 562 U.S. at 102).

A federal court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts. 28 U.S.C. § 2254(b)(1)(A). This requirement affords state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "This requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)). But if a petitioner's unexhausted claim is "plainly meritless, the court may deny the claim on the merits notwithstanding the petitioner's failure to exhaust." *Ortiz v. Heath*, No. 10-cv-1492 (KAM), 2011 WL 1331509 at *14 (E.D.N.Y. April 6, 2011) (citing 28 U.S.C. § 2254(b)(2)); *Rhines v. Weber*, 544 U.S. 269, 277 (2005)).

14

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  In other words, if the state court refused to consider an argument because it was procedurally barred under state law, the argument is barred from federal habeas review so long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)).  A petitioner's failure to comply with a state procedural rule qualifies as such an adequate and independent state ground, provided that (1) the state court actually "relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (citation omitted), and (2) the state procedural rule is "firmly established and regularly followed," *James v. Kentucky*, 466 U.S. 341, 348 (1984).

The Second Circuit has "held repeatedly that the contemporaneous objection rule" -- that state appellate courts will review only those errors of law that are presented contemporaneously such that the trial court is "reasonably prompted" to correct them -- "is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 103-04 (2d Cir. 2011) (collecting cases).  Hence, the Circuit has affirmed the denial of habeas relief based on the Appellate Division's ruling

that the failure of a petitioner to object at trial rendered a claim unpreserved for appellate review. *See, e.g., Garcia v. Lewis*, 188 F.3d 71, 81-82 (2d Cir. 1999) (affirming the denial of habeas relief where the petitioner's trial counsel failed to bring to trial court's attention a claim that he later attempted to advance on appeal). If a claim is procedurally barred pursuant to an independent and adequate state rule, a federal habeas court may not review it on the merits, unless the petitioner demonstrates (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

II.   *Analysis*

In his Petition, Chizor contends that his Fifth, Sixth, and Fourteenth Amendment rights were violated because: (1) the trial court denied an adjournment of the trial, (2) the prosecutor engaged in misconduct, and (3) the prosecutor engaged in further misconduct by violating the trial court's *Molineux* ruling. Dkt. 1 at 6, 9. I address each claim in turn.

a.   *The Denial of an Adjournment*

First, Chizor argues that the "[t]rial court arbitrarily denied [him] an adjournment to introduce the material testimony of an expert witness on behalf of the defense" and that denial violated his constitutional amendment rights. Dkt. 1 at 6. The Appellate Division considered the claim on direct appeal and concluded that it lacked

merit. *Chizor I*, 190 A.D.3d at 763-64 ("Under the circumstances presented, there is no merit to the defendant's contention that he was deprived of his right to present a defense as a result of the Supreme Court's refusal to grant him an adjournment to secure the testimony of an expert witness.").

Because the Appellate Division disposed of Chizor's adjournment claim on the merits, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (noting further that "[w]e have affirmed this approach time and again"). Accordingly, this Court must accord the state court's decision "substantial deference," *Fischer*, 780 F.3d at 560, and will only grant habeas relief if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," *Harrington*, 562 U.S. at 98.

The Appellate Division's decision that Chizor's adjournment claim lacked merit was reasonable, and thus habeas relief is not available to Chizor on his adjournment claim. The Supreme Court has instructed that "not every denial of a request for more time" violates a defendant's constitutional rights. *Ungar v. Sarafite*, 376 U.S. 575, 589-90 (1964) (due process not violated when trial judge declines to give a defendant more time unless the judge exhibits "a myopic insistence upon expeditiousness in the face of a justifiable request for delay"); *see also Morris v. Slappy*, 461 U.S. 1, 11 (1983) ("Not every restriction on counsel's time or opportunity to

investigate or to consult with his client or otherwise to prepare for trial violates a

defendant's Sixth Amendment right to counsel." (citation omitted)).

Instead, the decision to adjourn or interrupt a trial is within a trial judge's

"broad discretion."  *United States v. Beverly*, 5 F.3d 633, 641 (2d Cir. 1993) (citing *United*

*States v. Bein*, 728 F.2d 107, 114 (2d Cir. 1984)).  "To show abuse of that discretion,

appellants must demonstrate arbitrary action substantially impairing the defense."

*Bein*, 728 F.2d at 114.  As the Supreme Court has explained, "[t]here are no mechanical

tests for deciding when a denial of a continuance is so arbitrary as to violate due

process.  The answer must be found in the circumstances present in every case,

particularly in the reasons presented to the trial judge at the time the request is denied."

*Ungar*, 376 U.S. at 589-90.

The circumstances of the denial of Chizor's adjournment request are as

follows.  On May 30, 2017, the prosecution raised the issue of PS's psychiatric records --

showing that PS had delusions or hallucinations -- and moved to preclude Chizor from

cross-examining PS on the records.  Chizor's attorney stated: "I think I sent it out to an

expert to take a review of it" and argued that the hallucinations affected her credibility.

The court denied the prosecution's motion to preclude cross-examination.  Dkt. 8-1 at

95-96.

After the prosecution rested on Monday, June 5, 2017, Chizor's attorney

told the trial court that he would present a defense case, he would prefer to begin

presenting the case the next morning, and he expected Chizor and one witness -- Dr.

Burrell -- to testify.  Chizor's attorney described Dr. Burrell as "an important witness"

but indicated that the doctor would not be available the next day.  Dkt 8-3 at 59-60.  The

court responded, "I really don't want to go over to Wednesday with the defense case at

this point."  *Id.* at 60.  The court continued: "Just in terms of scheduling, then, assuming

the defense case is concluded by tomorrow morning, we should be prepared [to] sum

up tomorrow afternoon, certainly charge the jury by Wednesday morning.  That would

be how I would prefer to proceed.  You can see what the status of this doctor [is], I'm

not sure what testimony he has, but we'll cross that bridge tomorrow."  *Id.* at 61.

Chizor's attorney also indicated that he might move PS's medical records into evidence.

The trial court, however, said it would not admit the records because Chizor's attorney

already cross-examined PS about the records and no other witness could testify about

them.  Dkt. 8 at 15.

       The next day, Tuesday, June 6, 2017, Chizor's attorney informed the court

that Dr. Burrell would not be available until Friday.  Dkt. 8-3 at 64, 69 ("I understand

that my doctor is not available [until] Friday.  I understand the Court is not waiting

[until] Friday.  Just an exception to the ruling.").  The court requested an offer of proof

regarding the doctor's testimony, and the attorney indicated the doctor would testify

about P.S.'s psychiatric records and "[a]lso what Dr. Meltzer had talked about, the delay

in reporting and, you know, how the psychological issue may impact upon that."  *Id.* at

74.  The trial court asked Chizor's attorney why he could not find another witness to testify, given that he had known about the psychiatric records, and counsel did not provide an answer.  *Id.* ("I mean, I knew about it.").  The court concluded that it would not "delay the trial for that purpose" because Chizor's attorney already cross-examined Dr. Meltzer and established P.S.'s psychiatric history during P.S.'s cross-examination. *Id.* at 74-75.

The trial court's decision was reasonable, and it did not abuse its discretion by declining to interrupt the trial and delay it for three days for the defense to present a witness where: (1) Chizor's attorney had known for a week that it might need an expert based on the prosecution's disclosure of P.S.'s psychiatric records, (2) Chizor's attorney had already cross-examined two witnesses on related topics -- Dr. Meltzer who could testify about victim reporting habits and P.S. who could testify about her psychiatric history, and (3) Chizor's attorney failed to explain why he could not secure a different expert to testify in a timely manner.  *See Ungar*, 376 U.S. at 589-90; *Drake v. Portuondo*, 321 F.3d 338, 344 (2d Cir. 2003) (concluding that a state trial court's decision to provide a shorter continuance than requested "d[id] not appear to be an unreasonable application of federal constitutional law" where the court "did not curtail cross-examination or exclude rebuttal by the defense" of a key prosecution witness).  The

Appellate Division's determination to that effect was certainly reasonable.[3]  Thus, this claim provides no basis for federal habeas relief.

### b.   *Improper Questions and Statements*

Nor is Chizor entitled to habeas relief on his claim that the People engaged in prosecutorial misconduct during trial by repeatedly asking improper questions and making improper comments during questioning and statements in summation.  *See* Dkt. 1 at 9.  Chizor challenges the prosecutor's conduct during the direct and cross-examination of several witnesses, including Chizor, because "[t]he facts on record show how the prosecutor persistently ignored the judge's ruling on sustained questions and continued to proceed with the improper line of questions displayed to the jury."  *Id.*  He further challenges the prosecutor's summation because "the prosecutor flatly misstated the evidence and misle[d] the jury . . . [and] gave his opinion about the weight of the evidence, and repeatedly vouched for the credibility of the complainants and witness[es]."  *Id.*  The Appellate Division considered the claim on direct appeal and rejected it on the ground that it was "largely unpreserved for appellate review."  *Chizor I*, 190 A.D.3d at 763 (citing N.Y. Crim. Proc. Law § 470.05 (2)).  This determination

---

[3]      Indeed, in a pre-trial conference on June 5, 2017, the court had already emphasized it was not going to delay trial for witness testimony -- there, with respect to a police officer who was on vacation and was on the prosecution's witness list.  *See* Dkt. 8-2 at 178-79 ("THE COURT: I'm not going to keep this jury another week because of Officer Sloan.").

constitutes an independent and adequate state ground that precludes habeas review of this claim in federal court.  *See Downs*, 657 F.3d at 104.

Moreover, the Appellate Division addressed the merits, concluding that "while some comments and questions were improper, they did not, either alone or in combination, serve to deprive the defendant of a fair trial.  Any prejudice from these comments and questions was, for the most part, ameliorated by sustained objections and the trial court's instructions to the jury . . . , and those improper comments or questions which were not the subject of sustained objections were not so flagrant or pervasive as to have deprived the defendant of a fair trial." *Chizor I*, 190 A.D.3d at 763. This determination is an adjudication on the merits, *see Wilson*, 584 U.S. at 125, that is entitled to "substantial deference," *Fischer*, 780 F.3d at 560.  This Court will not disturb the Appellate Division's determination unless Chizor can show that it "involved an unreasonable application of[] clearly established Federal law."  28 U.S.C. § 2254(d)(1). Chizor has not done so.

"[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone . . . in an otherwise fair proceeding." *United States v. Young*, 470 U.S. 1, 11 (1985).  "[I]t 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation omitted).  "In order to reach the level of a constitutional violation, a prosecutor's remarks must 'so infect the trial with unfairness as to make the resulting

conviction a denial of due process.'" *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991)

(alteration adopted) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

"Whether a prosecutor's improper remarks result in a denial of due process depends

upon whether the remarks caused 'substantial prejudice' to the defendant." *United*

*States v. Tutino*, 883 F.2d 1125, 1136 (2d Cir. 1989) (quoting *United States v. Nersesian*, 824

F.2d 1294, 1327 (2d Cir. 1987)).  To determine whether "substantial prejudice" exists, the

Second Circuit has "adopted a contextual approach that considers the following factors:

'the severity of the misconduct; the measures adopted to cure the misconduct; and the

certainty of conviction absent the improper statements.'" *Id.* (quoting *United States v.*

*Biasucci*, 786 F.2d 504, 514 (2d Cir. 1986)); *see also Gonzalez*, 943 F.2d at 424 (same).

       Many of the prosecutor's questions and comments were indeed improper.

For example, during Dr. Meltzer's expert testimony, the prosecutor asked Dr. Meltzer

three questions about grooming.  The court sustained the defense's objections to each

question, instructed the prosecutor to "[m]ove on to another area," and informed the

prosecutor that he was "getting very close to the line of being in contempt of this Court."

Dkt. 8-3 at 49-50.  Additionally, during Chizor's cross-examination, the prosecutor told

Chizor to answer a question "[t]ruthfully."  Dkt. 8-3 at 90.  The prosecutor's comment

prompted the trial court to sustain the defense's objection and instruct the prosecutor to

"refrain from these characterizations" and avoid "argu[ing] with the witness."  *Id.* at 91.

The trial court minimized any prejudice by sustaining many of defense counsel's objections and on occasion admonishing the prosecutor and giving curative instructions.  *See Gonzalez*, 934 F.2d at 424 (emphasizing the trial court's "curative action" of sustaining an objection and instructing the jury).  Moreover, with respect to the prosecutor's three questions about grooming, the questions did not indicate his "flagrant disregard of sustained objections and the court's admonitions" or suggest that he "ignor[ed] the court's instruction[s,]" *People v. Stewart*, 459 N.Y.S.2d 853, 855-56 (2d Dep't 1983); *see also People v. Alicea*, 37 N.Y.2d 601, 604 (1975) (ordering a new trial for misconduct where the trial court gave the following admonishment to the prosecutor: "you deliberately four times in a row ask[ed] the question that I sustained and excluded the first time. You repeated it three additional times. *And that's the twenty-fifth time in the course of the trial at least that you have done that*." (emphasis added)).  Instead, the questions indicated that he did not understand why he could not question the witness about grooming, *see* Dkt. 8-3 at 49-51 (prosecutor's exchange with the court), suggesting that his actions were not intentional.  *See Tutino*, 883 F.2d at 1136 (explaining that the unintentional nature of a prosecutor's action factors into the severity of any prosecutorial misconduct).  Nor was the prosecutor's line of questioning on cross-examination a "transparent attempt[]" to undermine Chizor's credibility with the jury.

*Stewart*, 459 N.Y.S.2d at 856-57 (ordering new trial based on prosecutorial misconduct in more extreme circumstances).[4]

Ultimately, the trial was not so infected with unfairness as to result in the denial of due process. *See Gonzalez*, 934 F.2d at 424. Accordingly, it was reasonable for the Appellate Division to conclude that reversal on this ground was unwarranted, and habeas relief on this claim is denied.

      c.     *Molineux Claim*

Finally, Chizor is not entitled to habeas relief on his prosecutorial misconduct claim for the prosecutor's "blatant[] violat[ion of] the court's Molineux ruling over repeated sustained objections to questions pertaining to precisely what the Molineux doctrine prohibits." Dkt. 1 at 9. Chizor did not raise this claim below. Instead, he argued that, as a matter of state evidentiary law and unrelated to

---

[4]     Chizor also challenges the prosecutor's conduct during summation; for example, Chizor contends that the prosecutor misstated the evidence when, in summation, the prosecutor implied that PS did not disclose the sexual abuse at the hospital because she was loyal to Chizor. *See* Dkt. 8-3 at 161-62 ("When being asked, [w]ere you sexually abused, the loyalty to this man. The help is right in front of you. Are you being sexually abused? No, because she is loyal to him."). But the prosecutor's comments were largely responsive to the defense counsel's summation, *see* Dkt. 8-3 at 136 (questioning whether PS was reliable given her "psychotic episode"), and thus fall within the bounds of acceptable argument during summation. *See Cooper v. Costello*, 112 F.3d 503 (2d Cir. 1997) (affirming the denial of a habeas petition on prosecutorial misconduct grounds where "the prosecutor was merely responding to the content of defense counsel's summation, which had attacked the credibility of the same witness"); *People v. Gillespie*, 831 N.Y.S.2d 83, 84 (2d Dep't 2007) (no prosecutorial misconduct where "most of the challenged remarks were fair comment on the evidence, permissible rhetorical comment, or responsive to the defense counsel's summation"). Hence, the prosecutor's comments were likely not improper.

prosecutorial misconduct, the prosecutor's violation of the *Molineux* ruling deprived him of a fair trial; the Appellate Division, after considering that claim, concluded that "[t]he defendant's remaining contentions are without merit." *Chizor I*, 190 A.D.3d at 764. Nonetheless, Chizor's prosecutorial misconduct claim, though arguably unexhausted, may be denied because it is plainly without merit. *See Ortiz*, 2011 WL 1331509, at *14.

As described above, "[i]n order to reach the level of a constitutional violation, a prosecutor's remarks must 'so infect the trial with unfairness as to make the resulting conviction a denial of due process.'" *Gonzalez*, 934 F.2d at 424 (alteration adopted) (quoting *Donnelly*, 416 U.S. at 643). No denial of due process occurred here. Before trial, the trial court denied the prosecutor's *Molineux* application, which sought to establish that Chizor had relationships with the victims that predated the rapes, and that Chizor continued to have sex with the victims after the dates in 2011 charged in the indictment. Dkt. 8-1 at 89. At trial, when the prosecutor asked WC about events that occurred in 2015 -- after the dates charged in the indictment -- the trial court repeatedly sustained the defense's objections. Dkt. 8-2 at 139-40. The following exchange occurred regarding an alleged encounter in 2015:

> Q:     So, when you went to see the defendant, what if anything happened next?
>
> A:     We was just talking, stuff like that. Later that night like around 2 o'clock in the morning I fell asleep. I was sleeping, and then it was like a dream. Like I was like deep slumber. Then I felt somebody next to me. When I woke up, it was him trying to engage in having --

26

MR. RENFROE:        Objection.

THE COURT:        Sustained.  Yes.  The jury will disregard that.

MR. SWEET:        Can we approach?

THE COURT:        No, Counsel.  You can ask your next question.

Q:        On July 26, 2015, did the defendant give you oral sex?

MR. RENFROE:        Objection.

THE COURT:        Sustained.

Q:        Was the -- was there any physical contact between you and the defendant on this date?

MR. RENFROE:        Just objection.

THE COURT:        Sustained.

MR. SWEET:        Your Honor, could we approach?

THE COURT:        Approach, Counsel.

(Side-bar discussion held off the record.)

Dkt. 8-2 at 140.

After testimony concluded that day, Chizor's attorney requested a mistrial.  Dkt. 8-2 at 166.  The prosecutor argued that WC was 18 and so any testimony about sexual contact with Chizor would not be evidence of uncharged crimes in violation of the *Molineux* ruling.  The trial court disagreed, finding that the prosecutor

27

"certainly" violated the *Molineux* ruling because that evidence had no relevance "other than to have this jury speculate to exactly what I said you couldn't put into evidence . . . that there was some continuing course of conduct that ended at some point in 2015." *Id.* at 166-68.  But the trial court declined to grant the mistrial because it had sustained the objection immediately and directed the jury to disregard the testimony.  The court permitted Chizor's attorney to request a curative instruction to the jury.  *Id.* at 167-68.  Defense counsel later declined to seek such an instruction.  *Id.* at 173.

In short, as the trial court concluded, there was no erroneously admitted evidence.  The only testimony WC gave on the subject of the *Molineux* ruling -- evidence of a sexual relationship after the dates charged in the indictment -- was an incomplete sentence, *see* Dkt. 8-2 at 140 ("When I woke up, it was him trying to engage in having --"), before the trial court sustained the objection and instructed the jury to disregard the testimony, *id.*  The trial court sustained objections to the prosecutor's other questions on the subject before WC could answer them.  *See id.*  The trial court's actions thus minimized any prejudice that could have resulted from the prosecutor's questions.  *See Gonzalez* 934 F.2d at 424.  Accordingly, this claim is plainly meritless and provides no basis for federal habeas relief.

## CONCLUSION

Chizor has failed to show any basis for relief under 28 U.S.C. § 2254. Accordingly, the Petition is denied.  Additionally, I decline to issue a certificate of

appealability because Chizor has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2).  Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of Court is respectfully directed to mail a copy of this memorandum decision and the judgment to Chizor at his last address of record.  The Clerk of Court is also respectfully directed to seal the state court record located at Dkts. 8-1, 8-2, 8-3, 8-4, 8-5.

SO ORDERED.

Dated:     New York, New York
           August 29, 2024

_____
DENNY CHIN
United States Circuit Judge
Sitting By Designation